UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
EDGAR SOSA,

                    Plaintiff,

          -against -                    **MEMORANDUM AND ORDER**

MEDSTAFF, INC., CROSS COUNTRY           12 Civ. 8926 (NRB)
HEALTHCARE, INC., CORNELL UNIVERSITY,
WEILL CORNELL MEDICAL COLLEGE,
ADELA VARGAS, GUY MAZZA, DAVID GREENE,
and ISABEL STANSHINE,

                    Defendants.
--------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Edgar Sosa ("Sosa") brings this action against

defendants Cross Country Healthcare, Inc. ("Cross Country"),

Medstaff, Inc. ("Medstaff")[1], David Greene ("Greene"), and Isabel

Stanshine ("Stanshine") (collectively, the "Cross Country

Defendants"), as well as Cornell University ("Cornell"), Weill

Cornell Medical College ("Weill"), Adela Vargas ("Vargas"), and

Guy Mazza ("Mazza"), alleging discrimination pursuant to 42

U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("§

1981"), and the New York City Administrative Code § 8-107 et

seq. (the "NYCAC"). Sosa claims that he was subjected to

disparate treatment and a hostile work environment on account of

---

[1] Although Medstaff is now known as Local Staff LLC, the Court will use the
terminology used by the plaintiff in his amended complaint.

his race, and that he was ultimately terminated in retaliation for complaining about his treatment.

Presently before the Court is the Cross Country Defendants' motion to dismiss Sosa's amended complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Cross Country Defendants' motion is granted.

BACKGROUND[2]

## I.    The Defendants

Defendant Cross Country is a Delaware corporation headquartered in Boca Raton, Florida. Am. Compl. ¶ 10; Defs.' Mem. at 2. Cross Country is a holding company that owns non-defendant Cross Country Staffing, Inc., which in turn owns defendant Medstaff. Am. Compl. ¶ 12; Defs.' Mem. at 2. Medstaff acts as a staffing service, providing nurses to its clients (such as hospitals) to fill positions on a temporary basis. Am. Compl. ¶ 11; Defs.' Mem. at 2. One such client was defendant Weill, the research unit and medical school of defendant Cornell University. Am. Compl. ¶ 14-15.

---

[2] The Court draws the following facts from the plaintiff's Amended Complaint ("Am. Compl."), which we assume to be true for the purposes of this motion. See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006). To the extent necessary for context, we have also drawn from Cross Country Defendants' Memorandum of Law in Support of its Motion to Dismiss ("Defs.' Mem.").

Sosa also names four individual defendants in his complaint. Two were employed by Weill and Cornell during the relevant time period: Vargas, who worked as the Administrative Coordinator and Office Manager, and Mazza, who was a Senior Employee Relations Specialist. Id. ¶ 17, 19. The other two, defendants Greene and Stanshine, were employed by Cross Country and Medstaff as a Clinical Liaison and as the Vice President of Medical Services, respectively. Id. ¶ 21, 23. Greene and Stanshine, along with Cross Country and Medstaff, have brought the motion to dismiss currently before the Court. Throughout this Memorandum and Order, these four defendants are collectively referred to as the "Cross Country Defendants."

## II.  Factual Background

In early 2012, Sosa began working for Medstaff as an oncology nurse, and on or about March 5, 2012, he was placed at Weill. Id. ¶ 26-27. For his services, Medstaff paid Sosa $3400 per month. Id. According to Sosa, for about two months, he "was an exemplary employee," receiving compliments for his work and no indications of poor performance. Id. ¶ 29.

In early May 2012, defendant Vargas, Sosa's direct supervisor at Weill, approached the plaintiff and said "You look

-3-

like Urckle," then snickered and walked away.[3]  Id. ¶ 34; Defs.'
Mem. at 2.   Sosa then claims that on May 25, 2012, "for
absolutely no reason," Vargas commented to the plaintiff,
"You're so street, Eddie.  You're so street."  Am. Compl. ¶ 35.
Sosa believed that this statement implied that he must have
grown up "on the streets" because of his race.   Id.  In response
to these statements, on May 28, 2012, Sosa attempted to complain
to defendant Mazza, Weill's Senior Employee Relations
Specialist, but was unable to reach him.   Instead, he lodged his
complaint with non-defendant Angela Charter ("Charter"), Weill's
Associate Director of Employee Relations.   Id. ¶ 36.

    Beginning two days after Sosa's grievance to Charter,
Vargas began avoiding the plaintiff, refusing to make eye
contact and communicating with him through intermediaries.   Id.
¶ 38-39, 41.   The plaintiff complained again on June 1, 2012,
this time speaking directed to Mazza and telling him that
"Vargas ha[d] subjected him to discrimination on the basis of
race and was now retaliating against him for complaining."   Id.
¶ 40.   In the days that followed, Sosa claims that Vargas began
micromanaging his work and continued to ignore him.   Id. ¶ 41.
On June 6, 2012, the plaintiff complained for a third time, this

---

[3] The Court assumed that the "Urckle" statement was intended to compare Sosa,
who self-identifies as Latino, to Steve Urkel, a character from the
television show Family Matters, who is black.

time to defendant Greene, about Vargas's conduct.   Id. ¶ 42. That same day, Mazza contacted Sosa and told him that "the issue has been resolved and this will never happen again."   Id. ¶ 43. There is no indication that Vargas continued to ignore or micromanage the plaintiff, or made any discriminatory comments toward him, after June 6, 2012.  Defs.' Mem. at 3.

Two days later, on June 8, 2012, Sosa again complained to Greene, Cross Country's Clinical Liaison, who responded by telling the plaintiff that he would "investigate the matter." Am. Compl. ¶ 46.  Later that day, Greene heard from Vargas that Weill was terminating the plaintiff's employment at the hospital due to his loud singing, loud speech, and commission of a medical error.   Id. ¶ 47; Defs.' Mem. at 4.   Greene then informed Sosa of his termination from Weill and also suspended him from Medstaff for six months. Am. Compl. ¶ 47, 50.  On June 11, 2012, Sosa called defendant Stanshine to discuss the matter. He left a voicemail, and the two of them never spoke.  Id. ¶ 51.

**III. Procedural Background**

Sosa filed a charge of discrimination based on the allegations above with the Equal Employment Opportunity Commission, and he received his right to sue on November 28, 2012.  Id. 5-6.  Sosa first filed his complaint with this Court on December 10, 2012 and amended the complaint on February 4,

2013.   The plaintiff alleges eight causes of action in the amended complaint based on allegations of race-based discrimination and subsequent retaliation after Sosa complained about his treatment.   The Cross Country Defendants moved to dismiss the amended complaint on March 29, 2013.

**DISCUSSION**

## I.   Legal Standard

When deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).   Nevertheless, a plaintiff's factual allegations "must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).   If she has not "nudged [her] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (applying Twombly to "all civil actions," including discrimination suits).

## II.   Joint Employer Liability

The plaintiff claims that the Cross Country Defendants should be liable under Title VII, § 1981, and the NYCAC for

race-based discrimination.  Because there is no allegation that any of the Cross Country Defendants made any discriminatory comments, took any discriminatory actions, or were even aware of Sosa's allegations before June 6, 2012, the threshold issue is whether the Cross Country Defendants can be liable for the conduct of defendants Cornell, Weill, Vargas, and Mazza.

Sosa proposes that his case presents "a virtually paradigmatic joint employer situation" in which the Cross Country Defendants, as a staffing agency, should be held liable for the actions of the worksite employer.  Pl. Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 8.  In determining whether a joint employer relationship exists, "[r]elevant factors include the commonality of hiring, firing, discipline, pay, insurance, records, and supervision."  N.L.R.B. v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994).  As a functional matter, courts evaluate whether a joint employer relationship exists by considering "the control that [the employers] exercise over the employee in setting the terms and conditions of the employee's work."  See Gore v. RBA Grp., No. 03-CV-9442 (KMK)(JCF), 2008 WL 857530, at *4 (S.D.N.Y. Mar. 31, 2008).  In the staffing agency context, "a person whose salary is paid by one entity while his services are engaged on a temporary basis by another is an employee of both entities."  Amarnare v. Merrill Lynch, Pierce,

-7-

Fenner & Smith, Inc., 611 F. Supp. 344, 349 (S.D.N.Y. 1984) (emphasis added); see DeWitt v. Lieberman, 48 F. Supp. 2d 280, 288 (S.D.N.Y. 1999).

In this case, defendant Cross Country, through defendant Medstaff, paid Sosa $3400 per month during his placement at Weill. While this arrangement does not demonstrate that Medstaff and Cross Country exercised significant "control" over the plaintiff, the payment structure at the very least "raise[s] the possibility" that Medstaff and Cross Country were joint employers along with Weill and Cornell. Nelson v. Beechwood Org., No. 03 Civ. 4441(GEL), 2004 WL 2978278, at *5 (S.D.N.Y. Dec. 21, 2004).

But this is not the end of the inquiry. "Even where two companies are deemed a joint employer, . . . it is not necessarily the case that both are liable for discriminatory conduct." Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009). In evaluating alleged discriminatory activity in the joint-employment context, the appropriate focus is on the actual decisionmaker -- the conduct of one employer cannot necessarily be imputed to the other. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 89 (2d Cir. 2005); Dawson v. Bumble & Bumble, 398 F.3d 211, 224-25 (2d Cir. 2005); cf. Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 199 (2d Cir. 2005) ("[W]hen the circumstances

of one employee's employment justify the conclusion that she is being employed jointly by two distinct employers, it does not follow that all the employees of both employers are part of an integrated entity encompassing both.").

In this case, Sosa has not pled any facts indicating that the Cross Country Defendants should be held liable for the allegedly discriminatory and hostile conduct by Vargas. First, Vargas is the only defendant who the plaintiff claims made any discriminatory comments, and she is not alleged to have had contact, much less a relationship, with any of the Cross Country Defendants. Am. Compl. ¶ 17. Second, Sosa makes no assertion that the Cross Country Defendants were in a position to control the activities of Vargas or any other Weill employee. See Williamson v. Adventist Health Sys./Sunbelt, Inc., No. 6:08-cv-32-Orl-31GKJ, 2009 WL 1393471, at *4 (M.D. Fla. May 18, 2009) (refusing to hold a medical staffing company liable for the allegedly discriminatory conduct of hospital employees against a nurse placed at the hospital by the company). Third, the plaintiff makes no allegation that the discriminatory treatment continued after June 6, 2012, the date when Sosa first complained to Greene and made him aware of the issues with Vargas. Thus, the Cross Country Defendants cannot be liable in this case based on their "fail[ure] to take corrective measures

within [their] control." <u>Lima</u>, 634 F. Supp. 2d at 402 (quoting <u>Watson v. Adecco Emp't Servs., Inc.</u>, 252 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003)).

Accordingly, even if the Cross Country Defendants were the plaintiff's joint employer, Sosa has not pled facts sufficient to hold them vicariously liable for the actions of Cornell, Weill, Vargas, and Mazza under Title VII, § 1981, and the NYCAC.

**III. Race-Based Discrimination Claims**

Even assuming that the Cross Country Defendants could be liable for the other defendants' conduct, Sosa's claims of discrimination and hostile work environment are still fatally flawed. In the employment context, it is not necessary for the plaintiff to plead specific facts establishing a prima facie case for discrimination in order to survive a motion to dismiss. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002). However, in light <u>Twombly</u> and <u>Iqbal</u>, the "continued viability" of the generous <u>Swierkiewicz</u> pleading standard has been called into doubt. <u>Schwab v. Smalls</u>, 435 Fed. App'x 37, 40 (2d Cir. 2011). At this point, while it may not be necessary to include specific facts in the complaint, "dismissal is nevertheless appropriate where the plaintiff 'failed to allege even the basic elements of a discriminatory action claim.'" <u>Maldonado v. George Weston</u>

Bakeries, 441 Fed. App'x 808, 809 (2d Cir. 2011) (quoting Patane v. Clark, 508 F.3d 106, 112 n.3 (2d Cir. 2007)).

**A. Disparate Treatment**[4]

One such "basic element" of a claim of disparate treatment on the basis of race is that the plaintiff must plead "facts that would create an inference that any adverse action taken by any defendant was based upon [a protected characteristic of the plaintiff]." Kouakou v. Fideliscare N.Y., 920 F. Supp. 2d 391, 398 (S.D.N.Y. 2012) (internal quotation mark omitted) (citations omitted) (alteration in original). In order to qualify as an "adverse action," the employment action "must cause a 'materially adverse change in the terms and conditions of employment' and not just 'mere inconvenience.'" Patane, 508 F.3d at 112 (quoting Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005)).

While Sosa complains about his treatment at the hands of many of the defendants, the only "adverse actions" to which he was subjected were his termination from Weill/Cornell and his suspension from Medstaff/Cross Country. Sosa's claims that

---

[4] The disparate treatment analysis is the same for claims brought under Title VII, § 1981, and the NYCAC. See Ewing v. Coca Cola Bottling Co. of N.Y., Inc., No. 00 CIV. 7020(CM), 2001 WL 767070, at *5 (S.D.N.Y. June 25, 2001) ("[D]isparate treatment claims under Title VII, and disparate treatment claims under § 1981, are analyzed under the same approach."); Weinstock v. Columbia Univ., 22 F.3d 33, 42 n.1 (2d Cir. 2000) (noting that "identical standards apply to employment discrimination claims" brought under Title VII and the NYCAC).

Vargas averted his eyes and gave him the "silent treatment" after his initial complaints do not rise to the level of an "adverse action." See Carpenter v. City of Torrington, 100 Fed. App'x 858, 860 (2d Cir. 2004); Miksic v. TD Ameritrade Holding Corp., No. 12 Civ. 4446(AJN), 2013 WL 1803956, at *4 (S.D.N.Y. Mar. 7, 2013).

There is nothing in the complaint to suggest that Sosa's termination and suspension were based on race. In fact, Sosa states himself that "Defendants terminated [his] employment solely in retaliation for complaining of discrimination and retaliation." Am. Compl. ¶ 58 (emphasis added). Assuming the assertions in the complaint are true, Sosa was terminated because he complained, and for that reason alone;[5] there is no allegation that his termination was in any way motivated by racial animus. See Patane, 508 F.3d at 112 (dismissing a Title VII discrimination claim when the plaintiff characterized her mistreatment at work as purely retaliatory and not based on her gender). For these reasons, the Court dismisses the plaintiff's claims of disparate treatment on the basis of race.

**B. Hostile Work Environment**

To state a Title VII claim for hostile work environment, a plaintiff must plead that the conduct at issue: (1) was

---

[5] The Court will address the merits of the plaintiff's retaliation claims infra.

sufficiently severe or pervasive to create an objectively hostile or abusive environment, (2) created a subjectively hostile or abusive environment, and (3) created such an environment because of the plaintiff's protected characteristic. See Patane, 508 F.3d at 113; Kouakou, 920 F. Supp. 2d at 401-02. "[T]he standards applicable to the conduct alleged to constitute hostile work environment in violation of Title VII are also applicable to . . . employment claims under § 1981." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004); see also Liburd v. Bronx Lebanon Hosp. Ctr., No. 07 Civ. 11316(HB), 2008 WL 3861352, at *8 (S.D.N.Y. Aug. 19, 2008) (applying Patterson in context of a motion to dismiss).

Even if Vargas's comments could be imputed to the Cross Country Defendants, Sosa still would fail to state a claim for hostile work environment under Title VII and § 1981 based on the first prong of the test. The plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)) (internal quotation marks omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or

pervasiveness." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002; see also Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief.").

In this case, Sosa has identified only two comments as contributing to a hostile work environment: "You look like Urckle" and "You're so street, Eddie." First, two comments certainly do not qualify as "pervasive" -- "a few isolated instances" of mistreatment are certainly not equivalent to "a steady barrage of opprobrious racial comments." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). If two statements from a single source were considered "pervasive," it would render the statutory requirement meaningless.

Thus, because his claim is based on only two comments, those statements must be "sufficiently severe to overcome [the] lack of pervasiveness." Mormol v. Costco Wholesale Corp., 364 F.3d 54, 59 (2d Cir. 2004). On this ground, too, the plaintiff fails. The first statement likens Sosa to a non-Latino television character whose appearance is notable for being stereotypically "nerdy," an attribute unrelated to his race. Hearing this comment is clearly not the sort of situation that "intolerably alter[s]" Sosa's work environment. Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000). And the second

-14-

statement, while potentially discriminatory,[6] is not an explicit racial slur, a threat, or something especially humiliating. To sanction Vargas's comments as "severe" would undermine the aims of Title VII, as well as the past and future plaintiffs have been and will be subjected to legitimate workplace discrimination. Thus, the plaintiff's hostile work environment claims against the Cross Country Defendants pursuant to Title VII and § 1981 are dismissed.

However, the plaintiff correctly notes that the NYCAC is more liberal than its federal counterparts. "[E]ven if the harassing conduct does not rise to the level of being 'severe and pervasive,'" an employer may still be liable under the NYCAC. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (citing Williams v. N.Y. City Hous. Auth., 872 N.Y.S. 2d 27, 38 (1st Dep't 2009)). The city statute asks whether the plaintiff "was 'treated less well than other employees' because of her protected status." Ochei v. The Mary Margaret Walsh Nursing Home Co., Inc., No. 10 Civ. 2548(CM)(RLE), 2011 WL 744738, at *4 (S.D.N.Y. Mar. 1, 2011) (quoting Williams, 872 N.Y.S. 2d at 39).

---

[6] Although the term "street" is not defined in the complaint and may not be categorically negative, the Court believes that calling someone "street" may have demeaning connotations akin to labeling someone as "ghetto."

However, the NYCAC is only plaintiff-friendly to a point. "[T]he broader purposes of the [NYCAC] do not connote an intention that the law operate as a 'general civility code.'" Williams, 872 N.Y.S. 2d at 40 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). If the conduct at issue "consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences," then the defendant should not be held liable. Caravantes v. 53rd St. Partners, Inc., No. 09 Cv. 7821(RPP), 2012 WL 3631276, at *17 (S.D.N.Y. Aug. 23, 2012) (quoting Williams, 872 N.Y.S. 2d at 40).

The statements cited in Sosa's complaint do not approach the level of an actionable hostile work environment claim under the NYCAC.  We accept that the plaintiff was "offended and disgusted" by Vargas's comments.  Am. Compl. ¶ 35.  We also believe that the "You're so street" comment was better left unsaid.  However, this statement and the even more innocuous "You look like Urckle" line are "of such a minimal character" that they amount to just "petty slights or trivial inconveniences."  Daigne v. N.Y. Life Ins. Co., No. 09 Civ. 5157 (GBD)(GWG), 2010 WL 5625829, at *17 (S.D.N.Y. Dec. 8, 2010). The "short litany of a few incidents" recited by Sosa does not describe a work environment that is hostile as a matter of law,

-16-

even under the especially broad NYCAC. <u>Ochei</u>, 2011 WL 744738, at *5. Thus, the plaintiff's hostile work environment claims against the Cross Country Defendants under the NYCAC are also dismissed.

## IV. Retaliation Claims

Having found that the Cross Country Defendants cannot be held liable for the actions of Weill, Cornell, Mazza, and Vargas and that Sosa's race-based discrimination claims against the Cross Country Defendants should be dismissed, the Court now turns to the plaintiff's retaliation claims. Sosa alleges multiple types of retaliation from many different parties. First, he claims that Vargas retaliated against him for complaining of supposedly discriminatory statements by "becoming increasingly avoidant," refusing to speak directly with Sosa, and "micromanaging all of [his] work." Am. Compl. ¶ 38–39, 41. Second, the plaintiff claims that his employment at Weill/Cornell was terminated for reasons that were "obviously false, clearly pretextual, and blatantly in retaliation" for lodging complaints. <u>Id.</u> at ¶ 47–48. Third, Sosa was allegedly suspended from Medstaff/Cross Country in retaliation for making the aforementioned complaints. <u>See id.</u> at ¶ 50–58.

Of these three retaliation allegations, only the third applies to the Cross Country Defendants. Regarding the first

-17-

two, we have already established that the Cross Country Defendants cannot be held liable for Vargas's comments and Weill's decisions merely because Medstaff/Cross Country acted as a joint employer of the plaintiff. See supra Part II. There is no allegation that the Cross Country Defendants exercised a modicum of control over, or were even aware of, Vargas's conduct. Id. Therefore, we dismiss the plaintiff's retaliation claims against the Cross Country Defendants based on Vargas's treatment of him and based on his termination from the hospital.

However, the third claim of retaliation -- Greene's suspension of Sosa from Medstaff/Cross Country -- can clearly be directly attributed to the Cross Country Defendants. "To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012); see also Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). "Although a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss, the claim asserted must still be facially plausible and give fair notice to the defendants of [its]

basis." <u>Baez v. Visiting Nurse Serv. of N.Y. Family Care Serv.</u>, No. 10 Civ. 6210(NRB), 2011 WL 5838441, at *5 (S.D.N.Y. Nov. 21, 2011) (citation and quotation marks omitted) (alteration in original). Even considering this permissive facial plausibility standard, the plaintiff has still not stated a claim of unlawful retaliation under Title VII, § 1981, or the NYCAC.[7]

In applying the four-part prima facie test, Sosa satisfies the second, third, and fourth prongs. It is undisputed that the plaintiff complained to Greene about Vargas's conduct, creating the requisite awareness. <u>See</u> Am. Compl. ¶ 42; Defs.' Mem. at 17. It is also clear that a six-month suspension constitutes an adverse employment action. <u>See</u> <u>Patane</u>, 508 F.3d at 112. Regarding the final prong, the extremely close temporal relationship between Sosa's complaints to Greene and his suspension mere hours after the second complaint creates an inference of a causal connection between those events. <u>See</u> Am. Compl. ¶ 43, 46-47; <u>Gorzynski v. JetBlue Airways Corp.</u>, 586 F.3d

---

[7] While the standards for retaliation claims under Title VII and § 1981 are the same, the NYCAC is more liberal. <u>See</u> <u>Cook v. CBS, Inc.</u>, 47 Fed. App'x 594, 596 (2d Cir. 2002) (the prima facie case for retaliation is the same under § 1981 as it is under Title VII); <u>Augustin v. Yale Club of N.Y. City</u>, No. 03-CV-1924 (KMK), 2006 WL 2690289, at *29 (S.D.N.Y. Sept. 15, 2006) (noting that the NYCAC is broader than its federal counterparts). However, because the Court finds that Sosa did not engage in a "protected activity," which is still a requirement under the NYCAC, his claim fails under all three statutes. <u>See</u> <u>Mayers v. Emigrant Bancorp, Inc.</u>, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) ("The elements of retaliation under the [NYCAC] differ [from Title VII and § 1981] only in that the plaintiff need not prove any adverse employment action[.]").

93, 110 (2d Cir. 2010) ("[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.") (quoting Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001)).

Thus, the final hurdle for Sosa to clear for his retaliation claim is to establish that his complaints were "protected activity" pursuant to Title VII.  Under the statute, "[a] protected activity is an activity taken in good faith to protest or oppose statutorily prohibited discrimination." Morgan v. N.Y. St. Attorney Gen. Office, No. 11 Civ. 9389(PKC)(JLC), 2013 WL 491525, at *9 (S.D.N.Y. Feb. 8, 2013). It is not necessary that the underlying conduct actually be unlawful; rather, it is sufficient if the plaintiff had a reasonable belief of the conduct's illegality.  See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  In considering the plaintiff's perception, "mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013) (quoting Sullivan-Weaver v. N.Y. Power Auth., 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000)).  "The reasonableness of the

plaintiff's belief is to be assessed in light of the totality of the circumstances." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Based on the facts alleged in the pleadings, we agree with the Cross Country Defendants' assertion that Sosa "could not have objectively believed that he was opposing an unlawful employment practice when he complained to Greene," because the problematic conduct was isolated and innocuous. Defs.' Mem. at 18. Although the plaintiff's pleading states that he complained to Greene about "all the racial discrimination and retaliation" that he experienced, Sosa actually had three distinct grievances: (1) the "Urckle" comment, (2) the "You're so street" comment, and (3) Vargas's treatment of the plaintiff after his initial complaint. Am. Compl. ¶ 46. We have already discussed our view that the first and third grievances are particularly minor, and the law states that "general allegations of mistreatment . . . do not support an inference that plaintiff had a reasonable good faith belief that [he] was subject to [racial] discrimination." Drumm v. SUNY Geneseo College, 486 Fed. App'x 912, 914 (2d Cir. 2012).

That leaves the "You're so street" comment as the only potential basis for Sosa's belief that he was opposing unlawful conduct when he complained to Greene. The Court recognizes that

Vargas's comment was insensitive.   See Thomas v. iStar Fin., Inc., 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006) (finding an employer's comment to an employee that they were both "raised in the streets" to be "racially stereotyping, belittling, and false").   But the challenge for Sosa is that, despite his list of petty allegations, the "You're so street" comment is ultimately the lone example of offensive conduct in his complaint.   The Second Circuit has suggested that "one comment, standing alone" is insufficient to create a good-faith belief that a person has been subjected to workplace discrimination. Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1179 n.12 (2d Cir. 1996); see also Riscili v. Gibson Guitar Co., 605 F. Supp. 2d 558, 566 (S.D.N.Y. 2009).   And while other courts have found that a single comment could generate a reasonable belief of discrimination, the singular statements in those cases were far more offensive than the one at issue here.   See, e.g., Alexander v. Gerhardt Enters., Inc., 40 F.3d 187, 190 (7th Cir. 1994) (where the comment was "if a nigger can do it, anybody can do it"); McDowell v. North Shore-Long Island Jewish Health System, Inc., 788 F. Supp. 2d 78, 79-82 (E.D.N.Y. 2011) (where plaintiff was threatened and the word "nigger" was used).   Any reasonable employee would recognize that a stray remark, inappropriate but not abhorrent, does not violate the law; to find otherwise would

trivialize employment discrimination laws, undermining the serious goals of such legislation.  Thus, Sosa's retaliation claims against the Cross Country Defendants are dismissed.

## V.  Aiding and Abetting Claims

The plaintiff also claims that the Cross Country Defendants violated the NYCAC by aiding and abetting discriminatory workplace conduct.  Am. Compl. ¶ 85-87.  In order to be liable on this basis, the defendants "must have 'actually participated in the conduct giving rise to the claim.'" Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (quoting Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004)).  Here, Sosa has not made a single allegation that any of the Cross Country Defendants participated in Vargas's allegedly discriminatory conduct in any way.  Moreover, the Cross Country Defendants could not have aided or abetted the decision to suspend the plaintiff for six months, as individuals cannot aid or abet their own conduct.  See id. at 367-68 & n.7.  Therefore, we dismiss the aiding and abetting claims against the Cross Country Defendants.

### CONCLUSION

For the foregoing reasons, the Cross Country Defendants' motion to dismiss Sosa's complaint is granted.  First, the Cross Country Defendants' status as one of the plaintiff's joint

employers does not automatically confer liability for the conduct of the other employer, and Sosa has pled nothing to suggest that Vargas's conduct should be imputed to the Cross Country Defendants.    Second, even if there was such an imputation, Vargas's statements and actions would be insufficient to constitute race-based discrimination under Title VII, § 1981, or the NYCAC.    Third, the plaintiff has not stated a plausible claim for retaliation, as we find that he could not have reasonably believed that he was protesting unlawful discrimination when he lodged his complaints.    Finally, the threadbare assertions of aider-and-abettor liability under the NYCAC are insufficient to survive this motion to dismiss.

The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 22.


**SO ORDERED.**


Dated:    New York, New York
          December _12_ , 2013

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


-24-

Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for Petitioner**
Alex Umansky, Esq.
Phillips & Associates, PLLC
30 Broad Street, 35th Floor
New York, NY 10004

**Attorney for Respondent**
Joseph C. O'Keefe, Esq.
Proskauer Rose LLP
One Newark Center
Newark, NJ 07102